IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
TAMPA DIVISION

| | |
|---|---|
| ECON-O-CHECK CORPORATION,<br>a Georgia corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUNCOAST CREDIT UNION, a Florida<br>state-chartered credit union,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Econ-O-Check, a Georgia corporation ("ECC" or "Plaintiff") respectfully files its Complaint and Demand for Jury Trial against Suncoast Credit Union, a Florida state-chartered credit union, with its principal place of business in Tampa, Florida, ("Suncoast" or "Defendant"), and alleges:

PARTIES

1. Plaintiff is a Georgia corporation and citizen of Georgia authorized to do business under the laws of the State of Florida.

2. Plaintiff maintains its principal place of business at 3 Gresham Landing, Stockbridge, Georgia 30281.

3. Plaintiff's primary business is providing checking account enhancement services to financial institutions.

4. Defendant is a Florida state-chartered credit union and Florida citizen duly organized and existing under the laws of the State of Florida.

5. Defendant maintains its principal place of business at 6801 E Hillsborough Ave., Tampa, Florida 33610.

## JURISDICTION AND VENUE

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because the Defendant resides in this district and division, resides in this State, and a substantial part of the events or omissions giving rise to the claims set forth in this complaint occurred within this district and division.

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Pursuant to its terms, the Agreement that is the subject of this complaint is governed by the internal laws of the State of Georgia.

## COUNT I

### Breach of Contract

9. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 8 as though fully set forth herein.

10. This is an action against Defendant for breach of contract.

11. On or about January 18, 2018, for valuable consideration, Plaintiff entered into a Master Services Agreement ("MSA") and Secure Checking Program Exhibit ("SCPE") (collectively, the "Agreement") with the Defendant.   A copy of the Agreement is attached hereto as Exhibit A.

12. The Agreement represents a binding contract between the parties.

13. Under the Agreement, Suncoast agreed to establish and promote ECC's Secure Checking Program in its branches beginning on April 1, 2018.

14. Specifically, the SCPE provides that:

> [Suncoast agrees to] [b]egin offering the Secure Checking Program to current and prospective Account Holders on April 1, 2018 or such other date as mutually agreed upon by the parties in writing ("The Secure Checking Program Launch Date") and market the secure checking program in all of [its] branches through the term of this Secure Checking Program Exhibit . . .

(SCPE at Section 4.)

15. Likewise, Section 7 of the SCPE outlines Suncoast's Account Reporting and Fee payment obligations to ECC:

> [Suncoast must] [r]eport to ECC by the 5th day of each month . . . the total number of Secure Checking Program Accounts for the previous month . . . [and] [p]ay ECC a monthly fee equal to $1.95 per Secure Checking Program Enrollee . . . [Suncoast] will pay ECC a minimum monthly payment equal to $1,000.00 for the Monthly Program Fees due ECC regardless of the number of Secure checking Program enrollees reported . .

16. The initial term of the Secure Checking Program was three years from April 1, 2018.  (SCPE at Section 8.)

17. Despite Suncoast's clear obligations under the Agreement, Suncoast failed to establish ECC's Secure Checking Program in its branches on April 1, 2018.

18. In fact, on or about September 11, 2018, Suncoast's COO, Darlene Johnson, confirmed to ECC that Suncoast had decided not to launch the Secure Checking Program as previously agreed.

19. To date, Suncoast has failed or refused to establish or promote ECC's Secure Checking Program to its account holders and has not tendered any program fees to ECC as required by the Agreement.

20. Suncoast has failed to offer any legal justification for its failure to abide by the parties' Agreement.

21. Accordingly, Suncoast is in breach of the Agreement.

22. Suncoast's breach has caused, and will continue to cause, ECC to suffer significant damages in excess of $2,000,000.00.

23. Moreover, Suncoast's breach has caused ECC to incur attorney's fees and costs of litigation associated with the bringing of this lawsuit.

## COUNT II

### Fraudulent Inducement

24. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 8 as though fully set forth herein this Count.

25. This is an action against Defendant for fraudulent inducement.

26. On or about October 1, 2018, after months of informal discussions between the parties, Plaintiff, through the undersigned counsel, formally notified Defendant it was in breach of the Agreement and made a demand of Defendant that it immediately establish and begin to promote its Secure Checking Program in its branches in compliance with the terms of the Agreement.

27. Soon thereafter, on November 15, 2018, upon assurances from Defendant that it intended to abide by the Agreement, Plaintiff proposed a forbearance agreement for the purpose of allowing Defendant to cure its breach.

28. While the Defendant feigned an interest in curing its breach by engaging in negotiations over the specific terms of the forbearance agreement, the parties never reached a final agreement on terms, despite negotiating the same for over seven months.

29. Upon information and belief, Defendant did not engage in these negotiations in good faith and never intended to agree to the terms of any forbearance agreement, but continued the negotiations only for the purpose of delaying Plaintiff's filing of this lawsuit.

30. Plaintiff relied upon Defendant's alleged good faith participation in these negotiations, and refrained from filing its lawsuit for months while the parties continued to negotiate terms of the forbearance agreement.

31. As a result of its reliance on Defendant's purported good faith participation in the negotiations, Defendant remained in breach and Plaintiff delayed the filing of this lawsuit, thus incurring additional attorney's fees and expending unnecessary business resources in furtherance of the negotiations.

## COUNT III

### Attorney's Fees

32. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 8 as though fully set forth herein this Count.

33. Section 9(k) of the MSA provides "[i]n connection with any litigation...arising out of the Agreement or any Program Exhibit, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees…"

34. Furthermore, Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

35. Accordingly, under O.C.G.A. § 13-6-11, Plaintiff is entitled to recover from Defendant all expenses of litigation, including attorney's fees, in an amount to be determined at trial.

36. Therefore, under both O.C.G.A. § 13-6-11 and the express terms of the parties' Agreement, Plaintiff is entitled to recover from Defendant its expenses of litigation, including attorney's fees.

**WHEREFORE**, Plaintiff prays:

a) That damages be awarded to compensate Plaintiff for its injuries as a consequence of Defendant's unlawful acts in an amount to be determined by the enlightened conscience of the jury;

b) That punitive damages be awarded against Defendant in an amount to be determined by the enlightened conscience of the jury to deter Defendant and others from similar misconduct in the future;

c) That a trial by jury be had on all issues wherein a jury trial is permitted under law;

d) That attorneys' fees and expenses of litigation be awarded as authorized under the terms of the parties' Agreement and Georgia law;

e) That pre-judgment and post-judgment interest be awarded; and

f) That the Court award such other equitable or monetary relief as deemed just and proper.

-7-

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demands a trial by jury.  U.S. Const. Amend 7 and Fed. R. Civ. P. 38.

Respectfully submitted this 3rd day of July, 2019.

| | |
|---|---|
| SUGARMAN LAW LLP | /s/ Matthew G. Hawk |
| 154 Krog St. NE | Matthew G. Hawk |
| Suite 190 | Florida Bar No. 0022606 |
| Atlanta, GA   30307 | matt@sugarman-law.com |
| (404) 495-4811 | |

Attorneys for the Plaintiff